**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| WIRT D. WALKER, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civ. Action No. 96-2876 (EGS) |
| | ) | |
| BRUCE E. MONES, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

Before the Court is judgment creditor Bruce E. Mones' ("Mones") Motion to Reject the Special Master's Interim Report [Dkt. No. 269], Mones' Motion to Reject the Special Master's Final Report [Dkt. No. 277], judgment debtor Mobile Telecommunications Company's ("MTC") Motion to Adopt the Special Master's Final Report [Dkt. No. 278], MTC's Motion to Quash Subpoena Duces Tecum [Dkt. No. 281], and Mones' Motion for Hearing on MTC's Motion to Quash Subpoena Duces Tecum or, Alternatively, for Leave to File Surreply [Dkt. No. 287]. Magistrate Judge Alan Kay served as Special Master, pursuant to Rule 53 of the Federal Rules of Civil Procedure, to determine whether any monies are owed to Mones under the judgments entered in this case. Upon consideration of the motions, the responses and replies thereto, the applicable law, and the entire record, the Court concurs with the Special Master's ultimate

1

recommendation that there are no additional sums owed to Mones by any judgment debtor, albeit for slightly different reasons. Accordingly, Mones' Motion to Reject the Special Master's Final Report is **DENIED** and MTC's Motion to Adopt the Special Master's Final Report is **GRANTED**. Mones' Motion to Reject the Special Master's Interim Report is **DENIED AS MOOT**. Finally, MTC's Motion to Quash Subpoena Duces Tecum is **GRANTED** and Mones' Motion for Hearing on MTC's Motion to Quash Subpoena Duces Tecum or, Alternatively, for Leave to File Surreply is **DENIED**.

## I.   BACKGROUND

On December 12, 2001, the Court entered judgment in favor of defendant Mones for the arbitral award amount of $500,000. *See* Judgment (Dec. 12, 2001); *see also* Minute Order (Dec. 12, 2001).[1] On June 19, 2003, when payment of the Judgment had yet to be completed by the plaintiff judgment debtors, the Court entered an Agreed Judgment. The Agreed Judgment states that the amount still owed to Mones by the debtors who signed onto the Agreed

---

[1] States as follows: ORDER by Judge Emmet G. Sullivan: granting motion to confirm arbitration award [218-1] by MARVIN MONES, BRUCE E. MONES; all claims in the complaint and all counterclaims are dismissed with prejudice; each party to bear their own attorney's fees, expenses, and costs; Judgment shall be entered in favor of Bruce Mones and against Wirt Walker, Mishal Y.S. Al Sabah, Hazmah M. Behbehani, KuwAm Corporation individually and as the general partner in Special Situation Investment Holdings, Ltd. and KuwAm Corporation individually and as the general partner in Special Situation Investment Holdings, L.P., II jointly and severally, in the amount of $500,000, on Count 4 of the First Amended Complaint.

Judgment is "$287,166.68, plus interest at the rate of twenty-one percent (21%) and reasonable attorneys' fees and expenses incurred by Mr. Mones until this Agreed Judgment is paid in full." Agreed Judgment (June 19, 2003) [Dkt. No. 226]. On April 30, 2004, the Court requested that the parties submit pleadings regarding the amount, if any, still owed by the judgment debtors to defendant judgment creditor. On July 20, 2004, the Court *sua sponte* appointed Magistrate Judge Alan Kay to serve as Special Master to determine what sum, if any, is still owed to Mones.

The Special Master submitted an Interim Report on February 28, 2005, in which he laid out the calculation method for determining how much, if any, is still owed to Mones. *See* Special Master Interim Report (Feb. 28, 2005) [Dkt. No. 265]. The Special Master encouraged the parties to undertake a joint calculation of any amounts owed based upon his proposed formula in satisfaction and final discharge of the Judgment. In response to the Interim Report, Mones filed a motion [Dkt. No. 269] with this Court on March 21, 2005 to reject the Interim Report and vacate the Special Master's order to submit calculations in accordance with the formula in the Interim Report. Mones and MTC also submitted calculations as ordered by the Special Master. [Dkt. Nos. 271 and 272].

On April 13, 2005, prior to any decision on the motion to reject the Interim Report and in accordance with the calculations

submitted by the parties, the Special Master issued his Final Report [Dkt. No. 275]. He concluded that judgment creditor Mones received a total of $766,648.25 and that this amount is $251,301.89 in excess of the amount to which Mones is entitled under the Judgment and/or Agreed Judgment. Accordingly, the Special Master recommends that the Court find that there are no additional sums owed to Mones by any judgment debtors, including MTC.

## II.   DISCUSSION

### A.   Special Master's Interim Report

In his Interim Report, the Special Master provided the basic formula that would govern how payments from the judgment debtors would be allocated to the outstanding debt. He instructed the parties to start with $500,000 as the total amount of the net principal payments to be made by the judgment debtors. The $500,000 figure is based on the December 12, 2001 Judgment entered by the Court and the language in the Agreed Judgment that states that "Mones is only entitled to receive a total of $500,000 in net principal payments from the jointly and severally liable plaintiffs/judgment debtors." Agreed Judgment at 5. Further, the Special Master instructed the parties that no interest on unpaid principal balances between December 1, 2001 (the date of the original Judgment) and June 19, 2003 (the date of the Agreed Judgment) should be counted. Any remaining

principal balances after June 19, 2003, however, would be subject to the 21% interest rate pursuant to the Agreed Judgment. The Special Master also concluded that interest should not be calculated as compounding.

As for expenses and attorneys' fees, the Special Master concluded that only those expenses and fees incurred between June 19, 2003 and the date when the Judgment was paid off should count and debtors should not be liable for any attorneys' fees incurred after the principal amount of the Judgment was paid in full. The Special Master rejected the argument that the contingency fee charged by Mones' attorney should serve as a basis for calculating reasonable attorneys' fees. Instead, the Special Master stated that reasonable attorneys' fees "are based on the reasonable billable hours at appropriate hourly rates, necessary to effect collection of the judgment." Special Master's Interim Report at 5. The Special Master also informed the parties that attorneys' fees should be calculated based on the lodestar valuation of the time spent by Mones' attorney.

### B. Special Master's Final Report

The Special Master concluded that under the June 13, 2003 Agreed Judgment, Mones was entitled to receive $515,346.36, which included the $500,000 principal judgment, plus interest of $5,556.81, expenses of $2,889.55, and legal fees of $6,900. The Special Master arrived at his final figure in the following

5

manner. He started with the total net principal payment due to Mones – $500,000 under the original Judgment. Then, he calculated that between December 12, 2001 and June 19, 2003, which is the period between when the Judgment was entered and the Agreed Judgment was entered, judgment debtors paid a total of $378,856.23 to Mones. Also, for that same time period, the Special Master concluded that no interest had accrued on the $500,000 Judgment because there was no indication from either the December 12, 2001 Judgment or the June 19, 2003 Agreed Judgment that interest accrued on the $500,000 Judgment before June 19, 2003. Therefore, he subtracted the payments of $378,856.23 from $500,000 to get $121,143.77. Interest began to accrue on that amount beginning June 19, 2003, at 21% annum. In other words, on June 19, 2003, when the Agreed Judgment was entered, the principal balance due to Mones was $121,143.77, and the 21% interest began accruing on that amount as of that date.

Between June 19, 2003 and October 15, 2004, judgment debtors paid Mones $387,792.02.[2] The Special Master first applied the

---

[2] The Special Master notes the following payments to equal $387,792.02:
        Aug. 31, 2003 - $112,875
        Oct. 31, 2003 - $25,672
        Jan. 31, 2004 - $43,179.49
        June 30, 2004 - $91,065.53
        Oct. 15, 2004 - $115,000

Special Master's Final Report at 4-5 (Apr. 13, 2005).

payments to interest then to the principal.[3] After those payments were applied accordingly, the Special Master concluded that the judgment debtors overpaid Mones by $261,091.44 after full satisfaction of the Judgment.

Turning to expenses, the Special Master observed that the June 19, 2003 Agreed Judgment required the judgment debtors to pay expenses, but the December 12, 2001 Judgment did not. Therefore, he concluded that judgment debtors should be responsible for expenses incurred by Mones after June 19, 2003 until October 31, 2003, when the judgment was fully satisfied. The expenses for that time period as calculated by Mones total

---

[3] The Special Master applied the payments in the following manner:

$121,143.77 (outstanding principal) x 21% per annum = $25,440.19 x 73/365 = $5,088.04 (interest).

$112,875.00 (Aug. 13, 2003 payment) - $5,088.04 = $107,786.96.

$121,143.77 - $107,786.96 = $13,356.81 (remaining principal).

$13,356.81 (outstanding principal) x 21% per annum = $2,804.93 x 61/365 = $468.77 (interest).

$25,672.00 (Oct. 31, 2003 payment) - $468.77 = $25,203.23.

$13,356.81 - $25,203.23 = $11.846.42 (excess; principal paid off).

Mones was paid $25,203.23 on the $13,356.81 remaining principal balance, leaving an excess payment of $11,846.42. In sum, according to the Special Master's calculations, with the October 31, 2003 payment of $25,672, the Judgment was fully satisfied. *See* Special Master's Final Report at 4 n.5-12.

$2,889.55. Under the Special Master's formula, that amount should be deducted from the excess, overpaid amount of $261,091.44.

Turning to attorneys' fees, using Mones' representations, the Special Master found that between June 19, 2003 and October 31, 2003, Mones' attorney spent 17.25 hours at a rate of $400 per hour for collection of the Agreed Judgment, equaling a total of $6,900. That amount should also be deducted from the excess, overpaid amount of $261,091.44. Once expenses and reasonable attorneys' fees are deducted from $261,091.44, the Special Master concluded that Mones was still left with an overpayment of $251,301.89.

   **C. Judgment Creditor Mones' Arguments for Rejecting the Special Master's Interim and Final Reports**

Judgment creditor Mones argues that the Special Master's conclusions are incorrect. He contends that he is in fact not overpaid, but is still owed $178,692.46 under the Agreed Judgment. Specifically, he argues that the Final Report understates the amount of principal owed to Mones as of the date of the Agreed Judgment. Mones argues that the amount owed, as clearly stated in the Agreed Judgment, is $287,166.68, and not $121,143.77, as stated by the Special Master. Further, according to Mones, he was entitled to receive the 21% interest from the judgment debtors starting from December 1, 2002, and not from June 19, 2003, as determined by the Special Master. This is so

because when judgment debtors defaulted on the original promissory note of December 1, 2001, the parties agreed to enter into an Amended Note on December 1, 2002, for $527,800. Mones argues that every term of the Amended Note is incorporated by reference into the Agreed Judgment. Under the Amended Note, upon default by the debtors, Mones was entitled to be paid interest, retroactive to December 1, 2002, until all amounts due to him were paid in full.

Moreover, Mones contends that since the Agreed Judgment has yet to be satisfied, the Special Master's calculations limiting expenses to $2,889.55 are incorrect. The same applies to attorneys' fees. Since the Agreed Judgment has yet to be fully satisfied, attorneys' fees are still accruing. Additionally, with regard to the attorneys' fees, the Amended Note – the terms of which Mones' argues are incorporated into the Agreed Judgment by reference – states that the holders of the note are liable for Mones' attorneys' fees. Therefore, Mones' argues that he is entitled to attorneys' fees from the date of the Amended Note (December 1, 2002) and not just from the date of the Agreed Judgment.

### D. Judgment Debtor MTC's Arguments for Adopting the Special Master's Reports

MTC argues that Mones has interpreted the Judgment and the Agreed Judgment in a self-serving manner and has collected far more than he is entitled. Thus, MTC argues that the Special

Master's conclusions should be adopted by the Court. Specifically, MTC argues that the terms of the Agreed Judgment control what amount is still owed to Mones and not any promissory notes exchanged between the parties, including the Amended Note. MTC agrees with the Special Master's observation that the Agreed Judgment set forth new terms for the full satisfaction of the Judgment, and that it is the terms of the Agreed Judgment and not the terms of any promissory notes that control.

MTC argues that the guidelines set forth by the Special Master in his Interim Report were a fair means of calculating the amount due. Further, although MTC acknowledges that the principal balance due under the Agreed Judgment is $287,166.68, MTC still argues that the Court should accept the Special Master's calculation of $121,143.77 as the amount due. MTC argues that the Special Master did not ignore the $287,166.68 amount. Rather, he viewed that amount as a limitation on what Mones could recover. *See* Special Master's Final Report at 3 n.4 (noting that as of the date of the Agreed Judgment Mones was entitled to the lesser of $287,166.68 or $500,000 – both are ceilings and not floors). Finally, with respect to expenses and attorneys' fees, MTC agrees with the Special Master's conclusions.

**E.   Analysis**

The Court agrees with the Special Master that Mones is due no more than $500,000 in net principal payments from any judgment debtors under the terms of the original Judgment and the Agreed Judgment.  The Court respectfully disagrees with the Special Master, however, as to the application of payments received.

As the Court interprets the recitations in the Agreed Judgment, debtors paid a total of $382,901.55 in principal payments prior to entry of the Agreed Judgment.[4]  This left a total of $117,098.45 in principal payments that could be collected by the judgment creditor from any judgment debtors under either the Agreed Judgment or the original Judgment.

---

[4] The Agreed Judgment indicates the following payments made and applicable to the original Judgment:

$81,000 (Jan. 3, 2002) - $5,250 (interest) = $75,750 (principal payment)

$66,518.23 (sale of stock between May 31, 2002 and Dec. 1, 2002) and no amount specified as interest, fees, etc. = $66,518.23 (principal payment)

$312,338.00 (payments between Dec. 1, 2002 and Apr. 30, 2003) - $33,898.14 (interest) - $1,000 (late fees) - $36,806.54 (attorneys' fees) = $240,633.32 (principal payments)

Total principal payments on original Judgment between Dec. 1, 2001 and Apr. 30, 2003 = $382,901.55.

The Court will not undertake its own calculation of how these payments should have been applied.  Instead, the Court relies on the parties' representations incorporated into the Agreed Judgment of how the payments were applied.

Under the terms of the Agreed Judgment, some but not all of the judgment debtors[5] became liable for $287,166.68 plus 21% interest and reasonable attorneys' fees and expenses.  This amount reflects the total that the debtors listed in footnote 5 purportedly owe under the December 1, 2002 Amended Note entered into with Mones and incorporated into the Agreed Judgment by reference.  The terms of the Agreed Judgment supercede any terms in the Amended Note previously entered into by the parties.  Under the terms of the Agreed Judgment Mones is entitled to interest, attorneys' fees and expenses from the date of entry of the Agreed Judgment until the Agreed Judgment is paid in full.  Contrary to Mones' contentions, however, the Agreed Judgment does not provide for any retroactive or pre-judgment interest payments, nor does it provide for any late fees or any other potential fees under the terms of the Amended Note.  The Agreed Judgment, and not any promissory notes entered into by the parties, controls how the Court applies all payments received by Mones after entry of the Agreed Judgment.

The Agreed Judgment also includes one very important additional limitation.  Under the Agreed Judgment, Mones is only

---

[5] The following judgment debtors are jointly and severally liable under the Agreed Judgment:  Wirt D. Walker, III, KuwAm Corporation (individually and as sole general partner of Special Situation Investment Holdings, Ltd. and Special Situation Investment Holdings, L.P. II), Special Situation Investment Holdings, Ltd. and Special Situation Investment Holdings, L.P. II.

entitled to collect a total of $500,000 in net principal payments from any judgment debtors bound by either the original Judgment or the Agreed Judgment.  This means that although Mones is initially entitled to $287,166.68 plus 21% interest and reasonable attorneys' fees and expenses from the judgment debtors listed in footnote 5, once the principal payments from any judgment debtors (whether or not parties to the Agreed Judgment) reach $500,000, Mones is no longer entitled to any money from any debtor under the judgments of this Court (whether or not he has been paid the full $287,166.68 under the Agreed Judgment).

With this understanding of the terms of the Agreed Judgment in place, the Court finds that Mones was overpaid by a total of $252,092.36 prior to deduction of attorneys' fees and expenses. To reach this overpayment amount, the Court notes that any payments made under the Agreed Judgment have been applied by starting with the owed amount under the Agreed Judgment ($287,166.68).  Then pursuant to the sound method adopted by the Special Master in his Interim Report, any payments are first applied to accrued interest and then applied to principal.  Each payment both reduces the amount under the Agreed Judgment and reduces the total amount owed by all debtors, which is capped at $500,000.  Once the payments under the Agreed Judgment coupled with payments previously made on the original Judgment produce a net amount of principal payments totaling $500,000, both the

original Judgment and Agreed Judgment of this Court are satisfied.

Under the above approach, the $500,000 in total principal owed by the debtors was paid off by October 31, 2003.[6] The October 31, 2003 payment yielded an overage of $2,847.34 as explained in footnote 6. Mones then received three additional payments from various debtors between January and October 2004 yielding an additional $249,245.02 in payments. *See* Special Master Final Report at 4-5. With the overage and the additional payments after satisfaction of the judgments, Mones was overpaid

---

[6] Here is the breakdown of the calculations:

$287,166.68 (Agreed Judgment) x 21% annum = $60,305 x 73/365 = $12,061 (interest accrued from date of entry of Agreed Judgment until date of first payment after Agreed Judgment)

$112,875 (Aug. 13, 2003 payment under Agreed Judgment) - $12,061 = $100,814 (principal payment) (yields a remaining principal balance owed under all judgments of $16,284.45 when this principal payment is subtracted from the outstanding principal balance of $117,098.45 owed on the Judgment)

$287,166.68 - $100,814 = $186,352.68 (remaining principal under Agreed Judgment)

$186,352.68 x 21% annum = $39,134.06 x 61/365 = $6,540.21

$25,672 (Oct. 31, 2003 payment under Agreed Judgment) - 6,540.21 (interest) = $19,131.79 (principal payment) (yields an overpayment of $2,847.34 on the Judgment when subtracted from the $16,284.45 remaining balance owed by all debtors under the Judgment)

14

by $252,092.36.  All payments after that date were overpayments above and beyond the judgments imposed by this Court.[7]

Turning to expenses, the Court adopts the Special Master's figure of $2,889.55.  That amount should be deducted from overpayment of $252,092.36, reducing the overpayment to $249,202.81.

Finally, with regard to attorneys' fees, the Agreed Judgment states that reasonable attorneys' fees incurred by Mones' attorney should be paid.  The Circuit Court has generally applied the following three-part framework in analyzing the reasonableness of attorneys' fees:  "'(1) determination of the number of hours reasonably expended in litigation; (2) determination of a reasonable hourly rate or "lodestar"; and (3) the use of multipliers as merited.'" *Covington v. District of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995) (quoting *Save Our Cumberland Mountains, Inc. v. Hodel*, 857 F.2d 1516, 1517 (D.C. Cir. 1988) (en banc) (citation omitted)).  "While the court is empowered to exercise its discretion in determining the fee amount, the plaintiff still bears the burden of establishing all elements of the requested fee award, including entitlement to an award, documentation of appropriate hours, and justifications of

---

[7] The issues of whether the debtors are entitled to the return of any of the amount of overpayment or whether the overpaid amounts satisfy some other obligations between the debtors and creditors outside the scope of the Court's judgments are not before the Court.

the reasonableness of the billing." *Smith v. District of Columbia*, Civil Action No. 02-373, 2005 U.S. Dist. LEXIS 7107, at *2 (D.D.C. Apr. 18, 2005) (citing *Blum v. Stenson*, 465 U.S. 886, 896 (1984)).

Mones' attorney submitted time sheets indicating that he spent 16.5 hours on this case in the period between the entrance of the Agreed Judgment on June 19, 2003 and when the $500,000 judgment was paid in full on October 31, 2003. *See* Ex. 4 to Mones' Motion to Reject Special Master's Final Report [Dkt. No. 277].[8] The *Laffey* matrix maintained by the office of the United States Attorney for the District of Columbia states that for an attorney with 20 or more years of experience, a reasonable hourly rate was $380 per hour for the period between June 1, 2003 and May 31, 2004.[9] Thus, the number of hours reasonably expended (16.5) multiplied by a reasonable hourly rate ($380/hour) equals $6,270 in attorneys' fees to which Mones is entitled.

When the total amount of reasonable attorneys' fees ($6,270) and allowable expenses ($2889.55) are subtracted from the

---

[8] Although this amount of hours differs from the Special Master's calculation of 17.25 hours, the Court bases its calculation of hours on the latest time records submitted by Mones.

[9] While Mones claims an hourly rate of $400, he submits no justification for why the Court should depart upward from the *Laffey* matrix amount of $380. The Court finds the *Laffey* matrix amount reasonable and has been presented with no arguments for why a different, higher rate is appropriate.

16

original amount of overpayment ($252,092.36), a total final overpayment of $242,932.81 remains.  Accordingly, the Court finds that the debtors in this case have more than satisfied the $500,000 principal debt owed to Mones.

### F. Motions Pertaining to Special Master's Interim Report

Prior to entry of the Final Report by the Special Master, Mones filed a motion to reject the Special Master's Interim Report.  Because the Court accepts the ultimate conclusions of Special Master's Final Report and that Final Report relies on the formulas set forth in the Interim Report, any challenge to the Interim Report is **denied as moot.**

### G.   Motions Related to Subpoena

The parties also filed motions related to a subpoena served on Bryan Cave (attorney for MTC) by Mones.  Because the subpoena relates to a declaration of Wirt D. Walker, which the Court did not consider in reaching any conclusions in this Memorandum Opinion (nor did the Court consider declarations filed by any other parties), and the Court will not look behind the plain language of the Agreed Judgment or allow discovery on this issue now that the Judgment has been paid in full, MTC's Motion to Quash Subpoena Duces Tecum [Dkt. No. 281] is **granted**, and Mones' Motion for Hearing on MTC's Motion to Quash Subpoena Duces Tecum or, Alternatively, for Leave to File Surreply [Dkt. No. 287] is **denied.**

### III. CONCLUSION

For the foregoing reasons, the Court concludes that no additional sum is owed to judgment creditor Mones by any of the judgment debtors, including MTC, under the June 19, 2003 Agreed Judgment or the December 12, 2001 original Judgment. Accordingly, Mones motion to reject the Special Master's Final Report is **denied**.  MTC's motion to adopt the Special Master's final report is **granted** with the modifications introduced by this Memorandum Opinion.  Further, Mones motion to reject the Special Master's Interim Report is **denied as moot**.  MTC's motion to quash the subpoena served on Bryan Cave is **granted** and Mones' motion for a hearing regarding the subpoena is **denied**.  An appropriate order accompanies this Memorandum Opinion.

**Signed:     Emmet G. Sullivan**
**             United States District Judge**
**             May 30, 2007**